This honorable court is again in session. Case number 21-1122-NL, New Fortress Energy Inc Petitioner v. Federal Energy Regulatory Commission. Mr. Zworecki for the petitioner, Mr. Solomon for the respondent. Good morning, your honors. May it please the court. Good morning. Shai Zworecki on behalf of New Fortress Energy. If I could, I'd like to reserve three minutes for rebuttal. This case arises from FERC's failure to follow its precedent. Shell made clear, based on history, Supreme Court case law, and the common understanding of natural gas facilities, that the commission's authority under Section 3 of the Natural Gas Act reaches only LNG facilities that are connected to a pipeline. Since Shell, FERC has applied that requirement consistently. No pipeline, no jurisdiction. But that's not the test that FERC applied here. Instead, FERC applied a new piping-of-any-kind requirement. What's more, FERC moved the goalposts without acknowledging... Why do you say piping-of-any-kind? FERC's view is that it's a pipeline. It transports gas, therefore it's a pipeline. Yeah, a short one, but it's a pipeline. I don't understand why you say it's piping-of-any-kind. It's just a shorter pipeline, not a longer pipeline. In Shell itself, the Shell decision never uses the word piping. In Shell, as I understand, and the Lake Michigan facility, that's the one that's relevant, right? Because that's an important facility. There just wasn't a pipeline, correct? There was not a pipeline. Yeah, so there wasn't one there, and there is one here. So why aren't they perfectly consistent? I think it goes to the fundamental difference in the industry and in common usage between the term pipeline and what piping... FERC says a pipeline is a pipe that transmits gas, period. And it's interpreting its own precedent, which FERC says in no way depends on the characteristics of the pipeline. The only question is, is gas transmitted by pipeline, or in which case it's jurisdictional, or is it transmitted by boat or train, in which case it isn't. It seems... Pardon the expression, simple. Judge Tatel, I think that when... What am I missing? Tell me what I'm missing. When Shell used the term pipeline repeated. First of all... But there wasn't a pipeline in the Lake Michigan facility in Shell. I understand. Okay. But the term pipeline has to be understood against the common usage in the industry of what that means, against the history of the statute that FERC explained in the Shell decision, and even in light of the Shell decision's own language when talking about the Geismar facility when describing short segments of pipe. That was the interstate facility, right? That's right. Right. Which doesn't relate to the issue in the Michigan facility or this case. But what I think it does relate to is the commission's own use of language. The commission used the word pipeline repeatedly, 23 times in the opinion. In talking about the Geismar facility, it talked about short segments of pipe. Those are not the same thing. They're also not the same thing in Supreme Court case law. The Supreme Court in the Phillips decision talked about pipelines. It also talked about segments of pipe. Isn't there a case where they talked about pipeline in this way, where there was a short pipe, or a short segment like this, and they said, no, no, no, that's not a pipeline? You point to a lot of cases where there were great big things that look like great big complicated pipelines, but what you don't have is precedent where they've said if it's short, or it's a single pipe, that can never be a pipeline, do you? We don't have that case because there is not a case that I'm aware of for this one in which FERC has attempted to assert jurisdiction over a pipe rather than a pipeline. And that's not surprising. In Southern LNG in 2010, they said, when companies construct a pipeline to transport import or export, a pipeline close to the border is deemed to be an import or export facility for which Section 3 authorization is necessary. They pretty much thought there that a small segment of a pipeline would be sufficient to trigger Section 3 authority. But not a freestanding independent 75-foot pipe of the sort that you have. But you don't have any... Suppose this pipeline, excuse me, suppose according to your terminology, this pipe was much longer and actually went for hundreds of miles across Puerto Rico. Would we have a different case? Same diameter, just a hundred miles long, to a power plant, no, which was delivering gas to a power plant a hundred miles long, different case? I think as a matter of physics, if you had one that was running hundreds of miles, it would likely have a larger diameter, just reflecting the volume of the pressure. Forget the diameter issue. I'm sorry I brought that up. Twice the diameter, okay? But going a hundred miles across the island. Yes? Pipeline? I think if we were talking a hundred miles or more, that's likely a pipeline. How about 50? How about 50? I think 50 probably is a pipeline. And what about 25? Probably a pipeline as well. Okay. One? I mean, I think one's a much closer case. What's the standard you're applying here? FERC's standard is simple. If it's a pipe that transmits gas, it's jurisdictional. And I didn't see you cite any case, maybe you can tell me one, where FERC's decision relied not on the distinction between pipeline and other methods of transportation, but on the characteristics of the pipeline. Now, I know you cite cases where the discussion, they discuss the different characteristics of a pipeline. But is there a case that you can cite where FERC jurisdictional decision turned on the characteristics? No, Judge Cato, but there's also not a case before this one in which FERC said that the standard is any type of piping as opposed to a pipeline. It's always said pipeline. It is a pipeline, and pipeline as a matter of judicial, industry, and common usage means a large scale transportation system. Since you say there is no case, then I'm not sure how we would accept your argument that they departed from precedent. I think the baseline precedent is that in Shell, the commission was talking about a pipeline and what a pipeline means, what it means to the commission and numerous decisions that the commission has issued, what it means to courts, what it means to the industry. But when you say what it means, one, for common usage, I'm not at all clear what the common industry usage is. I think you just cited the FERC cases. Since FERC cases were simply describing the facts before them, and there isn't a case where they said if it's only 75 feet, it won't be a pipeline, then again, I was struggling as I read your brief to find where this evidence of a contrary common usage is in their decisions. I mean, it so happens that most of the time there's multiple pipes and they're longer and bigger. But it so happens doesn't mean that that's definitional, let alone jurisdictionally definitional, does it? Judge, I think it's helpful to look at how the commission itself in Shell justified the pipeline requirements. And when it talked about pipelines, it was talking about large scale transmission systems that typically cross state lines, which is how companies evaded state regulation over these pipelines. That was the concern that Congress was trying to target in granting the commission jurisdiction. So when the commission uses the term pipeline, when it applies the pipeline requirement, that is what it means. Excuse me, but I didn't think this case had to do with interstate shipping. Isn't this an import facility? It is. So it's a different, so what you're talking about doesn't relate to the question in this case, does it? The commission also explained in Shell, I think this is a paragraph 40, that the same standard for pipeline for Section 7, which deals with interstate transmission, will also apply to Section 3, which deals with foreign importation, which is what we have here. I think the reason is... Go ahead. Go ahead, David. No. Isn't there a procedural opportunity where New Fortress could have sought a FERC declaratory order establishing the jurisdiction? It was puzzling to me because there was a lot of lawyering around the threshold decision whether to go with New Fortress and where to cite the facility. If I wasn't of FERC declaratory order, sought on this issue, it mattered a lot. Two points, Judge Pillard. One, there was a lot of lawyering, not only by New Fortress, but also by PREPA. And the FERC staff provided assurances that if the 75-foot pipe would likely not be considered a pipeline. So there was a lot of lawyering, and FERC staff read FERC's orders the same way that we do, which is that there's a distinction between a pipeline and a pipeline. In addition to that, while a declaratory ruling is something that can be sought, those take a very long time, and in fact, there's no deadline by which the Commission ever has to rule on it. We're familiar with those issues of deadline and FERC. But at the time, am I wrong that there was a lot of focus on the gas being trucked elsewhere? Was it less prominent in people's minds at that time whether it would be also substantially fueling the adjacent power plant? It seemed like that was less prominent at the time that this decision was being made. No, Judge Pillard. I think it was clear to Commission staff that that's what we were talking about. The joint appendix, I think it's 51 to 59, this is where the history of these dealings with Commission staff is recounted. And while trucking was discussed, so too was the 75-foot pipe. New Fortress submitted to FERC a memo summarizing the discussions, restating what staff's position had been. And then staff didn't object and say, actually, no, we think there's a question about this. So there was quite a lot of assurance going into this project that it would not be jurisdictional. And while there is no precedent involving a pipe of this length, at the same time, there is also no example of FERC asserting jurisdiction over a facility with a pipe of this length. There is no example of somebody seeking a declaratory ruling. If you could just step back and give me the common sense importance of the assertion of jurisdiction. What rides on this? I mean, here they've said we wouldn't require them to stop, but is this all about NEPA? What else hinges on whether the facility is jurisdictional or not? What's the substance of the regulatory regime that's triggered? Sure. So I think the threshold question is that if a facility is subject to FERC's jurisdiction, then it can't be operated without submitting an application that FERC reviews and approves. That is a lengthy, expensive process that's currently ongoing. There is, of course, no guarantee that FERC will approve the facility or that it will Why not? What is it looking at? Or is it principally the environmental impacts? What else is it looking at? Safety? National security? I mean, I know I should read the law and know this, but it's not really in the briefs what the practical issue is here. So I think as a practical matter, there's a significant amount of data that FERC seeks to collect about the operation of the facility. There's a lot of back and forth between FERC and New Fortress's lawyers. In addition, as a practical matter, when you have a jurisdictional facility, if New Fortress wanted in some way to expand the facility, it would need approval from FERC for that. If New Fortress wanted to sell the facility, it would need approval for that. And so there are significant consequences to being a regulated entity in this space. Do you have to comply with NEPA as well? I'm sorry? Would you have to comply with NEPA now as well? So as I read your brief, your basic argument is the one you've made here today, which is that FERC's decision here represents a dramatic change in policy. And you say that several times throughout the brief in several different ways. If I don't agree with you about that, is there any other argument that you have other than that? In other words, if it's not a change in policy, if we think this decision is consistent with previous policy, perhaps an explanation of it, consistent, does that end the case? It does not. Would you just list for us what the other arguments are? Sure. So one argument is that under this court's decision in the American Gas case, FERC has an obligation to respond to the views, to the arguments raised by a detective commissioner. Okay. Good point. Now, let me just ask you about that. The way I read it, FERC didn't mention, I don't think FERC mentioned the dissent, but FERC's position is we responded to the same, to the issues raised by the dissent because they were the same as the issues that you raised. Is that not accurate? I think that's not accurate. And I also think, not only did FERC not name Commissioner Dam, the entirety of it- You're not serious about that, are you? Do we have a case that says that for FERC to satisfy its obligation to respond to a dissent, it has to name the dissenter? I think the point is not whether the dissenter is named- Well, you just said it. That's why I asked you the question. I think the point here is not only didn't they name him, but they didn't respond to his substantive arguments. FERC says they did because they were the same arguments raised by the parties. What argument did the dissenter make that FERC didn't respond to? The dissent argued, as FERC did, I'm sorry, the dissenter argued, as New Fortress did, that there is a distinction between pipes and pipelines. FERC's response to that was that the distinction is not relevant, period. They explained why it wasn't relevant. See? I think they explained why it wasn't relevant. Exactly. Okay, so what's the next argument that's not a change in policy? If I may just briefly respond to what I think was Judge Pillard's question, that the problem with saying it's not relevant is that they didn't give an explanation for why it isn't relevant that we are dealing here with something that is not a pipeline, but rather a 75-foot pipe. They said it's not relevant because the question isn't the character of the pipeline, it's the distinction between pipeline and other modes of transportation. Now, you don't agree with that. I understand that. But FERC responded to it. Oh, but not only do I not agree with that, but I also don't agree that that explanation is in the order. That is an explanation that is offered by the briefs. That's not an explanation that the Commission provided. But this is all, the discussion we're having is in response to my question about whether the Commission adequately responded to the dissenter. I take your point that you don't think their response was adequate, but FERC responded to the argument the dissenter was making, because as you just pointed out, you made the same argument. So, let's just keep going. Is there another argument that you want to be sure we don't miss? So, just to finish on the dissenting Commissioner point, I think the point is FERC didn't adequately respond to either argument. I understand that. What's the second argument? What's another argument that you want to be sure we don't miss? Sure. So, if you think that the Commission did not depart from precedent in Shell, that in this case, simply applying the same standard that it applied in Shell, which is the pipeline standard, then as a substantive matter, it is an unreasonable conclusion to say that a 75-foot by 10-inch pipe is a pipeline. In other words, FERC did one of two things. That's different from your primary argument? Yes, because FERC did one of two things here. It either changed the pipeline requirement to an any-type-of-piping test. That is a different test that it hasn't adequately explained. Or, if it didn't do that, and you think that it adhered to the pipeline requirement, then it is improperly applying the pipeline standard to the facility that we have at issue here. What's the third? Is there another argument? So, I think the last argument that I would make is, FERC has come up with a standardless rule here, because it hasn't given us... No, I was asking you, if we think this is consistent with FERC's precedent, then that answers that question. That means that the standard they're applying here is a standard they applied in Shell. So, that's really not a different argument. I think it's a different argument, because what this case then shows is that the standard that applies in Shell is not a coherent standard, because FERC has never explained what constitutes a pipeline. It hasn't explained... Okay, do you have anything else? Okay. Mr. Doresky, you said that the argument that they make about the physical characteristics being not relevant is not an argument that's in the order, but I see it in the order at JA 109 to 110, where they talk about, but the argument that your client made, that design specifications, length, diameter of pipe matter, and the Commission says we've not ever considered that to matter. That relates to the volume, but Section 3 has no minimum size limit. Rather, we're looking at whether a pipeline is engaged in transportation or there's some other function. And so, it basically does explain it's not relevant understanding. So, I guess I'm not following why you say they just brushed it off as irrelevant, rather than saying, you know, this wasn't transferred by truck, or train, or boat, because the end user got it by pipe. Judge Pillard, I think you're looking at paragraph 23 of the original order. In part, and ensuing paragraphs, yeah. Yeah, and I make a couple of points about paragraph 23. One, the Commission says here that it has never considered physical characteristics. I would point you again to the language in Shell, where the Commission was talking about pipelines in one place, but it was talking about short segments of pipe in another. And even though the short segments of pipe discussion was in the discussion of the Geismar facility, the point is that the Commission has taken into account, it has distinguished between pipes and pipelines. And in a sense, it has to, because when we're talking about a pipeline, we're talking about something that inherently is defined by its physical characteristics. So, of course, when you're looking at a facility, you have to ask, does this facility have the physical characteristics of a pipeline? So, it's simply not true to say that the Commission has never considered physical characteristics. The language in Shell itself shows that it has. As for the language about Sections 3 and 7 not having a minimum size requirement, but what Shell says is that they do have a pipeline requirement. That's how the Commission interpreted Sections 3 and 7 in Shell. In the domestic context? In both contexts. Again, I take you back to paragraph 40 of Shell. It starts with the domestic context at Section 7, but then in paragraph 40, the Commission is saying that it is applying the same understanding of pipeline from Section 7 to Section 3, which is what's at issue here. And so, we have the same understanding of pipeline for both in that respect. And you have the Shell decision itself, again, talking about pipeline and talking about short segments of pipe. Again, what I would say is you have to take into account the physical characteristics because there's no other way to understand what a pipeline is. I think I mentioned the Southern LNG case, which is cited in FERC's brief. And that case itself then cites, after it makes that point about just a short segment of pipeline is all that's needed, it cites other cases, including a FERC case that granted Section 3 authorization for a 30-foot pipe, 3-foot by 4-inch diameter pipe. That's the Sword Energy case. The New Mexico case was a 150-foot pipe, in their words, with an 8-inch diameter. So, it seems like, at least in the Section 3 context, which is all we have to decide before us, pipes close to, and even smaller than the pipe at issue here, have been held sufficient to trigger Section 3 authority. And so, doesn't that just – you may want them to care about the characteristics, but they don't. And so, your argument would have to be, not that it's standardless, because they clearly have said pipes of any length, in this case and in others, and simply that you would have to argue that's just beyond their authority under the statute to reach just a pipe, a single pipe of these relative diameters. But you haven't made that argument, have you? Yeah, so, the main argument that we're making is that if you're going to reach just a pipe line, they have to provide an explanation for why the statute does that. In Shell, they provided an explanation for why the statute reaches pipe lines, but not diameters of the pipe. Why isn't the explanation they gave adequate? They say – maybe I'm wrong about this, but the explanation they give is that it's transmission by pipe line. It's not transmission by boat or truck. That's their explanation. Why isn't that enough? Judge Tatel, that's not the explanation that the commission gave in its order. That is an explanation that the commission has argued in its brief. That is not the explanation that the commission gave. If I may briefly respond to Judge Millett on FERC's cases. So, I think there are two different categories of cases that FERC is relying on. One is the Aguirre and the Ecoelectric case. Those are ones where an application was submitted to FERC. There was, at most, cursory analysis of jurisdiction. Those were not developed analyses of whether FERC had jurisdictional authority. And the pipelines at issue there were over one mile and four miles long, respectively. So, that doesn't tell us what to do with a 75-mile pipe. There may be some gray area between a pipe and a pipeline, but 75 feet is out. The other cases that I believe you're citing don't appear anywhere in the order. Those are cases that the commission is relying on for the first time in its appellate brief. And in addition to that, all of those cases involve... I know, but is it true under Chenery, we don't come up with the reasons. But if, in fact, as a matter of objective record, FERC has other cases where it's exercised Section 3 authority over even smaller pipes. Do we have to turn our head away and ignore those just because they didn't cite the cases? As long as it's not adding any more reason. That's fine. It's just confirming their reasoning. I think if FERC wants to say the reason that we can exercise jurisdiction over this facility with a pipe is, look, we've done it before. That's a reason that they ought to give in their order. But I also think those cases don't support the point. Because as your honor's quotes from the cases suggested, those cases are dealing with segments of pipe that are connected to a larger pipeline. You have a branch system. Those are not cases involving freestanding, independent, 75-foot segments. We're just talking about a segment of pipe that connects to a larger system. And it's that larger system that makes it. Okay, thanks. We'll hear from FERC. May it please the court, Robert Solomon for the commission. I think your honors well understand the agency's points and the agency's explanations. Judge Tatel, you are correct. All that matters for purposes of whether this is an LNG import facility is whether the 75-foot pipe transports gas. What the commission explained is that the pipeline rule is not simply that there be a pipeline somewhere of some indeterminate length. Rather, what the commission explained in the Shell case and explained in the orders on review is that a pipeline for this purpose is one that enables the LNG facility, if it's an export facility, to receive gas for liquefaction. And if the facility is an import facility, whether the pipeline enables the facility to send away gas after it has been vaporized. Judge Tatel, you asked whether there is really at bottom any issue other than simply whether the commission has changed its policy. And I submit that that is in fact the only question that petitioner raises. The other issues such as reliance and response to the dissenting commissioner, those all devolve back to the issue of whether the commission changed its policy. Mr. Solomon, if this is so clear, why was there so much confusion when the company and the Puerto Rican government were conferring with FERC up front? It seems like the FERC senior staff got it wrong. And I'm just curious why that is, if the issue is so clear. Well, on the record, I'm not so certain that the FERC staff got it wrong. And I believe in your questions to petitioner, the actual mechanics and characteristics of the facility were evolving in 2017. The plan was to have trucks take away the capacity. The commitment with the Puerto Rican power authority to fuel its San Juan plant wasn't developed until 2018. So I submit that the record is somewhat more equivocal. You can find this on JA-9, where you have the testimony of the power authority. But even taking New Fortress at its word as to its recollection of the meeting, Judge Pillard, I think you were correct in focusing on whether and why not New Fortress didn't petition for a declaratory order. Everybody agrees that Shell is the leading authority here. The Shell order was in response to a petition for a declaratory order. Indeed, the other leading cases, the 2014 and 2015 pivotal LNG cases, the AmeriCase, the Andalusian case, those were all orders in response. How long does it take to get one of these declaratory orders? How long does it take, on average, to get one of these declaratory orders? Petitioner suggests that New Fortress didn't file because it would take a long time. I am not aware of any particular extreme length of time in issuing a declaratory order. And I think the commission would be responsive to a plea for expedition if the declaratory order petition is premised on having a decision on jurisdiction by a certain time. Have you seen cases like this where people ask for, parties ask for expedited declaratory order and they get them? Have you seen that happen? Yes, the commission does try to oblige. Do you have a sense then of how expedited that is? I mean, are we talking six months, a year? They have a lot on their plate. Two years. I just don't have any sense of, I'm not asking to sort of get off the top of your head. I'm just trying to get some sense. But if an applicant files a petition for a declaratory order and says that the applicant needs a FERC response in two months or three months, the commission will try to oblige. The one thing we don't want to receive is some type of petition for writ of mandamus. And I believe that the commission has been quite timely. In the cases that I mentioned, there was no claim from the applicant that the commission acted in an untimely manner. The petitioner here is well represented by qualified lawyers. The regulations are clear that when the applicant seeks the informal advice from commission staff, that those are not the official views of the commission. The other thing New Fortress could have done, other than petitioning for a declaratory order, is to file its application. If the commission thought that there wasn't a jurisdictional basis for acting on that application, the commission would have done what it did in the 2013 Hawaii case, the gas company case. It would have dismissed the application for want of jurisdiction. Well, counsel's argument is that preparing an application is big and complex, and they want a jurisdictional finding before they go through that. Well, if they want a jurisdictional finding before they have to go through the effort of filing an application, the vehicle is to petition for a declaratory order. Is there something, is that significant to the case we have before us today in some way? I'm not sure. Excuse me, is there something so significant? Yeah, what's the significance of that? We have a clean, straightforward legal question before us today about the FERC's decision. We have a petition for review of that decision. Are you arguing that because they didn't seek a declaratory opinion that that's somehow relevant to how we handle this case? No, it really isn't relevant to the jurisdictional question presented. We're just responding to the argument of the petitioner who argues that the commission's decision was unfair, that it came out of the blue. Judge Millett, you asked whether there are any cases where the commission found that a short piece of pipe is not a pipeline, and there are no such cases. And, in fact, the Shell case itself said in paragraph 38, note 71, that the length of the pipe, for purposes of section 7, not section 3, but the length of the pipe, actually using the word pipe, does not matter. In the interstate context, all that matters is that the pipe connects to the interstate grid. In the foreign commerce context, all that matters is that the pipe be able to deliver natural gas and natural gas form. The Southern LNG case, which you cite in your brief, but just for a different proposition, makes the point about just needing, in section 3, you just need a segment of the pipeline to be enough to bridge the import line. It doesn't have to be the whole pipeline, just a segment. And then it cites a number of other FERC decisions, including ones that have relied on pipe of, one was 150 feet, one was 30 feet long. Can we acknowledge the existence of those decisions since the commission didn't cite them, or is that a generic problem? Well, the commission, of course, says that the physical characteristics don't matter. The common usage of the word doesn't matter because we're dealing with a particular context here, a section 3 LNG terminal in foreign commerce. But we're further responding to the petitioner's argument that— So, if we're reviewing a decision that asks about the body of FERC decisional rulings, are we allowed to look at ones that FERC didn't cite? Does generic mean we can't even look at cases? Well, you certainly don't need to look— Is that my question? I'm really asking. This is just a weird take on generic I haven't thought about before, so I really am interested in your point. Well, from a generic perspective, the commission said that the physical characteristics don't matter, that the common usage of the word— I'm aware of what the commission said. I'm asking you if it seems to me that, in fact, the commission has already crossed this bridge even before this case. Right. I will say the commission has— In cases that are cited in a case you cite, is that something in addressing arguments about common understanding, FERC's departure from precedent that we can even take notice of or not? I just am asking this Chenery question. Now, would I have to, just Chenery, even say ignore— Normally, it says reasoning. That's discretion, but ignore the body of case law? Well, the commission did not say that a smaller pipe measured in feet can be a pipeline, so there is the Chenery issue, but this also goes to the point that the commission did say— Is it a Chenery problem if elsewhere the commission has said that's sufficient to trigger Section 3? I would think that would be a problem elsewhere, but again, the issue here is that a pipeline for this particular purpose is one that transports gas and differentiates between the pipeline mode and the truck, train, and ship mode where the gas is delivered in liquid form. What the commission did in the Shell case was to look at the history of pipeline regulation under the Natural Gas Act, which was enacted in 1938 when the only form of delivery of gas was in a stationary, non-mobile pipeline manner, and the commission found that it didn't want to engraft other modes of delivery. I do want to point out that the pipeline test is just one of the factors in a three-part test. If the concern is interstate commerce as opposed to foreign commerce, there is a fourth step whether there is a connection— This is just an earlier hypothetical case. I had a case and they said, we're making a new rule. We've never addressed this as a question of first impression, and then adopted Rule X. And it turned out that there were actually 10 prior FERC cases that said, no, the rule is not X. But because the commission in the case before us didn't cite those other ones, we avert our eyes to the existence of those under Chenery. No, I don't think you would avert your eyes. But the standard for a change is that the commission first acknowledge and recognize and then explain. If the basis for the FERC order was that it is changing its policy, I think you would review the order based on the commission's motivation. If, in fact, there were pre-existing cases such that the commission erred in thinking that it had changed its policy when it really hadn't, I have to believe that that's something that the review in court would be able to take into account because, in fact, the commission would not be changing its policy. But here, the commission explained the basis for the rule, explained the application of the rule to New Fortress, and explained in its orders that, in fact, there was no departure from the rule. And that is all that matters for purposes of review in this particular case. OK, thank you. Let's see. Mr. Dvorsky, I think you were out of time, but you can have two minutes. Thank you. If I could, I'd like to make four quick points. One, Mr. Solomon pointed to PREPA's testimony in the record at Joint Appendix 9. If you look at that testimony, it is talking about what was presented to FERC staff. And the understanding of the facility was that gas would be delivered from the vaporizer through power plant piping located entirely within San Juan Power Station property. Staff representatives focused on the absence of a natural gas pipeline extending a substantial distance, suggesting that the absence of such facilities would make it less likely that the commission would assert jurisdiction. Our meeting left us confident that, in FERC staff's view, the configuration which NFV ultimately proposed made it like other LNG facilities which the commission had concluded did not require its authorization. The interactions with FERC staff were clear, and FERC staff understood, shall to me, what we understand. Second, shall FERC's own regulations say that they can't speak for the commission? I'm sorry, Judge Haley. FERC's own regulations say they can't speak for the commission. They can't speak for the commission, but I think this supports the argument that what FERC has done here is a departure, and FERC's own staff understood it that way. Well, that's reversing the standard. I mean, you can't be right about that. If they can't speak for the staff, you can't use what they said. If they can't speak for the commission, you can't use what the staff said to argue the commission has changed its position. I think what the regulations provide is that you can't rely in an estoppel sort of way on what the staff says. But I do think that the evidence of what the staff says is relevant evidence. You have three more points. Go ahead. Second, shall rooted the pipeline requirement in history? The commission has to similarly explain how a piping of any kind requirement, which is the test they applied here, comports with that history and with the statute. Third, Mr. Solomon relied on footnote 71 of Shell. If you look at footnote 71 and at the text in paragraph 38, it says, quote, all of the liquefaction facilities over which the commission has exercised section 7 jurisdiction have had pipeline interconnections with the interstate pipeline grid. So what footnote 71 is talking about, as I was trying to explain to Judge Millett earlier, when you have a short segment of pipe that connects a facility to the interstate grid, that's one thing. But that's not the same thing as what we have here. We have an independent freestanding short pipe. Last point I would make, and this goes back to Judge Tatel, your question earlier about Commissioner Danley's dissent. Commissioner Danley pointed to common usage. He pointed to dictionary definitions. The commission didn't engage with any of it. But he also, in paragraph 18, talked about this very point that in Shell, the commission thought it was very significant whether you had a pipeline that connected to the interstate transportation system. He specifically raised that point in paragraph 8 of his dissent. The FERC's order doesn't respond to that argument in explaining why that connection is no longer valid. Why would that matter? What matters when you're talking about import is not the interstate system, but the boundary between foreign and domestic. Because the commission in Shell, and this is again in paragraphs 40 to 43, said that the same standard for section 7 applies to section 3. When Congress added the definition of LNG terminal in 2005, it didn't mean to change that understanding. And that's what the commission expressly said in Shell, that it was applying the same standard. That is the standard on which the industry has relied and built up expectations. The commission now wants to depart from that. It needs to explain itself and it's failed. Mr. Dvorsky, Mr. Solomon, thank you. The case is submitted.
judges: Tatel, Millett, Pillard